IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brandon Wallace, | ) | Case No. 8:10-cv-2856-CMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Levern Cohen, individual and official | ) | |
| capacity, Warden of Ridgeland Correctional | ) | |
| Institution; and John Ozmint, individual and | ) | |
| official capacity, Director of SCDC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 33.] Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on November 4, 2010, alleging claims of discrimination, excessive punishment, and violations of the Equal Protection Clause and the Double Jeopardy Clause. [Doc. 1.] On June 16, 2011, Defendants filed a motion for summary judgment. [Doc. 33.] On June 17, 2011, in accordance with an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Plaintiff was advised to respond to the motion for summary judgment and of the possible consequences if he failed to respond

adequately to Defendants' motion. [Doc. 34.] Plaintiff failed to file a response in opposition.

## BACKGROUND

Plaintiff, who at all times relevant to this action was in the custody of the South Carolina Department of Corrections ("SCDC"), was disciplined for sex-related disciplinary offenses—exhibitionism and public masturbation—while he was housed at Ridgeland Correctional Institution ("RCI"). [Doc. 1 at 3; Doc. 33-2 ¶¶ 8, 10–14; Doc. 33-3 at 8–9, 12–13, 16–17.] The disciplinary hearing officer imposed a punishment that included 180 days of canteen and telephone privilege suspension, disciplinary detention, and wearing a pink jumpsuit. [Doc. 1 at 3; Doc. 33-3 at 8, 12, 16; Doc. 33-4 at 16.] Plaintiff alleges he was additionally punished through "rules" that were not imposed on him by the disciplinary hearing officer but were enforced by Defendant Levern Cohen ("Cohen") through RCI's officers and were not corrected by Defendant John Ozmint ("Ozmint"). [Doc. 1 at 3.] Plaintiff alleges that, under these rules, inmates wearing pink jumpsuits were required to eat dinner together at 3:00pm, were locked-down after dinner at 3:15pm, and remained on lock-down until breakfast the following morning. [*Id.*] Plaintiff alleges that, as a result of these rules, inmates wearing pink jumpsuits could not attend worship services (including Sunday morning church, Saturday morning Rastafarian Sabbath Day services or Jummah Services)[1] or attend classes that took place after 3:15pm. [*Id.* at 3–4.] Plaintiff also alleges that inmates wearing pink jumpsuits were not allowed to take up trades such as carpentry

---

[1] Plaintiff alleges that inmates wearing pink jumpsuits could not attend religious services that occurred after 3:15pm but could attend services and classes that occurred before 3:15pm, such as "Sunday morning church services, Saturday morning Rasta Farian Sabbath day services, and Jumma services." [Doc. 1 at 3.] Additionally, upon incarceration at RCI, Plaintiff indicated he followed the Christian faith and did not attempt to have his affiliation changed until after he left RCI. [*See* Doc. 33-2 ¶¶ 7–8.]

or attend college courses or get their GED if they were over twenty-one years of age. [*Id.* at 4.] Plaintiff contends these rules are excessive punishment.

Plaintiff seeks injunctive relief "saying that the defendant stop the excessive punishment" and prospective relief "to correct the actions of the defendant(s)." [*Id.* at 5.] Plaintiff also seeks court costs, attorney fees, and expenses incurred in this action. [*Id.*] Lastly, Plaintiff seeks nominal damages and "punitive damages against all defendants for $30,000 and $130.00 for everyday that I was deadlocked after 3:15pm because of my pink jumpsuit." [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

4

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

6

>adverse party cannot produce admissible evidence to
>support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

### DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

First, because Plaintiff is no longer incarcerated at RCI[2] [*see* Doc. 1 at 2 (stating

Plaintiff's place of confinement was Tyger River Correctional Institution); Doc. 21 (Plaintiff's

notice of change of address, updating Plaintiff's address to Allendale Correctional

Institution); Doc. 33-2 ¶ 8 (stating Plaintiff was transferred from RCI on February 17, 2010

due to his role in a riot and an assault on another inmate)], his claims are moot to the

extent he is seeking injunctive and/or declaratory relief.  *Slade v. Hampton Roads Reg'l

Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for

injunctive relief was moot).  Plaintiff's claims for monetary damages, however, survive his

release from RCI, *id.*, and, as public officials, Defendants are subject to suit for damages

in their individual capacities in a § 1983 lawsuit,[3] *Hafer v. Melo*, 502 U.S. 21, 31 (1991);

---

[2] Plaintiff was transferred from RCI on February 17, 2010 due to his role in a riot and assault on
another inmate.  [*Affidavit of Warden Cohen*, Doc. 33-2 at ¶8.]

[3] The Eleventh Amendment prohibits federal courts from entertaining an action against a state or state
agency.  *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v.
Louisiana*, 134 U.S. 1, 10–11 (1890).  Eleventh Amendment immunity "extends to 'arm[s] of the State,'
including state agencies and state officers acting in their official capacity." *Cromer v. Brown*, 88 F.3d 1315,
1332 (4th Cir. 1996) (alteration in original) (internal citations omitted).  Further, "a suit against a state official
in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As
such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71
(1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state officials, sued in
their official capacity, from liability for monetary damages under 42 U.S.C. § 1983, and because the state is
not a "person" amenable to suit for monetary damages under § 1983, state officials sued in their official

*Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.

**Discrimination/Equal Protection Claim**[4]

Liberally construing the Complaint, Plaintiff alleges inmates wearing pink jumpsuits were treated differently from inmates in general population. [*See* Doc. 1 at 3–4.] Specifically, Plaintiff alleges inmates in pink jumpsuits went to eat dinner together, and with no one else, at 3:00pm and were locked in their cells at 3:15pm; Plaintiff implies inmates in general population were not subject to lock down in the early afternoon. [*Id.* at 3.] Plaintiff alleges that, as a result of being locked down at 3:15pm, inmates wearing pink jumpsuits could not attend religious services and classes held after 3:15pm and implies that inmates in general population could participate in these activities. [*Id.* at 3–4.]

Defendants contend Plaintiff failed to specifically allege or provide evidence that he is treated differently than any similarly situated inmates.[5] [Doc. 33-1 at 5.] After discussing the District Court's decision in *Williams v. Ozmint*, 726 F. Supp. 2d 589 (D.S.C. 2010),

---

capacity are not liable for monetary damages under § 1983. *Id.* As a result, to the extent Plaintiff has attempted to sue Defendants in their official capacities, those claims must be dismissed because Defendants, in their official capacities, are alter-egos of SCDC are entitled to immunity pursuant to the Eleventh Amendment.

[4] While Plaintiff asserts "Equal protection clause violation" and "discrimination" as separate issues, the Court addresses these similar issues together as an equal protection claim.

[5] Defendants contend Plaintiff lists equal protection and discrimination as two of his claims but "does not provide any explanation for how he believes the policy and security restrictions at issue violate his Equal Protection rights." [Doc. 33-1 at 5.] While Defendants are technically correct in the sense that Plaintiff did not explicitly indicate which allegations go to his equal protection claim, the Court finds Plaintiff has implicitly indicated the basis for this claim, and therefore, the Court has considered this claim.

Defendants also argue "the policy and security restrictions challenged by [Plaintiff] have already been found constitutional, by this very Court, against an equal protection challenge, and [Plaintiff] has provided no evidence that suggests a different finding in this litigation." [*Id.* at 7.]

The Equal Protection Clause of the Fourteenth Amendment prohibits the States from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. To establish an equal protection claim in the Fourth Circuit, a prisoner must demonstrate two elements:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Because the Supreme Court has determined that prison regulations are valid if they are reasonably related to legitimate penological interests, the requisite level of scrutiny is the rational basis test rather than strict scrutiny, even if the disparate treatment implicates the prisoner's fundamental rights. *Id.* at 654–55 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Therefore, a reviewing court must determine if the disparate treatment is reasonable in light of the security and management concerns of the prison system. *Id.* at 655.

The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how

9

accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). The Supreme Court has also advised that when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

As Defendants point out, courts in this District have considered and rejected claims similar to Plaintiff's, finding SCDC's pink jumpsuit policy and its enforcement at RCI did not present an equal protection violation. *See, e.g.*, *Williams*, 726 F. Supp. 2d at 592–93; *Govan v. Singleton*, No. 8:07-3789-MBS, 2009 WL 799649, at *3 (D.S.C. Mar. 24, 2009). In *Govan*, the plaintiff alleged that being required to wear a pink jumpsuit and being locked down after the evening meal until breakfast deprived him of the same rights and privileges as inmates in the general population. 2009 WL 799649, at *3. The court found the plaintiff's claim was without merit, relying on the defendants' affidavits stating that "the wearing of pink jumpsuits and restricting movement serves a legitimate penological interest in limiting sexual offenders['] access and exposure to female staff." *Id.* The court also found other courts had upheld similar restrictions. *Id.* (citing *Green v. Roberts*, 2008 WL 4767471 (M.D. Ala. Oct. 29, 2008); *Hargett v. Adams*, 2005 WL 399300 (N.D. Ill. Jan.14, 2005)). Here, Plaintiff failed to allege any circumstances that warrant departing from this District's precedent.

First, Plaintiff failed to establish the threshold element of an equal protection claim. As stated above, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Morrison v. Garraghty*, 239 F.3d at 654. Contrary to Plaintiff's allegations, he was not similarly situated with the inmates in RCI's general population; unlike general population inmates, Plaintiff was found to have committed sex-related disciplinary offenses. [Doc. 1 at 3; Doc. 33-3 at 8–9, 12–13, 16–17.] As a result, Plaintiff was similarly situated with the inmates who had also committed sex-related disciplinary offenses, and Plaintiff alleges he was treated the same as, not differently from, these inmates. [Doc. 1 at 3–4.] Therefore, Plaintiff failed to establish the threshold element of an equal protection claim.

Second, Plaintiff failed to demonstrate a genuine issue of material fact exists as to whether the pink jumpsuit policy, and how RCI officials carry out the policy, is reasonable. Cohen averred that, because of these inmates' behavioral issues, inmates subject to the pink jumpsuit policy are required to remain in their cells after the 3:30pm count and are not assigned jobs outside of their housing units. [Doc. 33-2 ¶¶ 28–29.] Cohen stated the movement restrictions serve a legitimate penological purpose because the restrictions limit these inmates' access and exposure to female staff and visitors and reduce the security threat previously demonstrated by these inmates. [*Id.* ¶ 31.] The restrictions also reduce the administrative burden of providing staff for increased supervision of these inmates. [*Id.* ¶ 33.] Further, Cohen averred the restrictions do not prevent these inmates from attending school; working inside their dorm; accessing medical; attending religious services at the chapel; going to the commissary, canteen, pill line, or library, including the law library; participating in recreation and religious activities pursuant to policy; or signing up for sick

11

call pursuant to policy.  [*Id.* ¶¶ 32, 35–37.]  Finally, Cohen averred other sanctions fail to deter inmates from committing sex-related disciplinary offenses; for example, revoking canteen privileges fails as a deterrent because many inmates have little or no money available for purchasing canteen items [*id.* ¶ 41] and imposing disciplinary detention time fails as a deterrent because many inmates consider disciplinary detention time to be a break from the general population routine and enjoy having a single cell to themselves [*id.* ¶ 43].  Therefore, Defendants demonstrated there is a legitimate penological interest that justifies the regulation, alternative means remain open for exercising the rights Plaintiff complains are denied to him, accommodating the asserted constitutional rights would negatively impact guards and other prisoners, and no alternatives to the regulation have proved to be effective; Plaintiff failed to demonstrate a genuine issue of material fact exists with respect to any of these elements.  Consequently, the Court finds Plaintiff failed to establish a violation of the Equal Protection Clause and recommends that Defendants' motion for summary judgment be granted as to this claim.

**Excessive Punishment Claim**

To the extent Plaintiff alleges a claim based on a violation of the Eighth Amendment, the Court finds Plaintiff has failed to demonstrate that Defendants' actions constituted cruel and unusual punishment.  Under the Eighth Amendment, a prison official cannot be liable for a violation of an inmate's rights "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   In other

words, to determine whether prison officials have violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). To satisfy the objective component of the test articulated in *Farmer* and show that a deprivation is extreme enough to constitute an Eighth Amendment claim, "a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Moreover, under the Prisoner Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e); therefore, a prisoner must demonstrate he or she suffered a physical injury—either a physical injury alone or a physical injury that produced an emotional injury—to state a cognizable Eighth Amendment claim.

Here, Plaintiff failed to produce evidence that he suffered a significant physical or emotional injury resulting from Defendants' actions; therefore, Plaintiff failed to establish a violation of his Eighth Amendment rights. Plaintiff contends "[b]eing locked down at 3:15pm until the next day (approximately 15 hours a day) everyday until you get out of a

13

pink jumpsuit, just because you are in a pink jumpsuit can take a psychological toll on the victim." [Doc. 1 at 4.] However, Plaintiff fails to allege that he suffered any psychological injury as a result of Defendants' actions; he merely alleges that psychological injury could result from being locked down for fifteen hours a day or from wearing a pink jumpsuit. Further, Plaintiff provides no evidence of any injury; he makes only this reference to an injury that could occur to someone. Therefore, the Court finds Plaintiff failed to demonstrate a genuine issue of material fact as to whether Defendants violated his Eighth Amendment rights and recommends that Defendants' motion for summary judgment be granted as to this claim.[6]

**Double Jeopardy Claim**

Plaintiff argues he received punishment for his disciplinary charge that was not ordered by the disciplinary hearing officer or mandated by SCDC policy and was in addition to the punishment ordered by the disciplinary hearing officer. [Doc. 1 at 3.] Defendants contend Plaintiff failed to develop a double jeopardy claim in the body of his Complaint, and therefore, the claim should be dismissed for failure to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. [Doc. 33-1 at 8–9.] Defendants also contend that even if Plaintiff developed a colorable double jeopardy claim, the claim fails as a matter of law because the security restrictions Plaintiff contests are not criminal in nature. [*Id.* at 9.]

---

[6] Courts in this District have considered whether SCDC's pink jumpsuit policy constitutes cruel and unusual punishment and have concluded that it does not violate the Eighth Amendment. *See, e.g.*, *Williams*, 726 F. Supp. 2d at 593–95; *Mickell v. Ozmint*, No. 3:08-2973-RBH, 2009 WL 1361873, at *6–7 (D.S.C. May 11, 2009).

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In articulating the scope of the Double Jeopardy Clause, the Supreme Court has stated:

> We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "'in common parlance,'" be described as punishment. The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings.

*Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (emphasis in original) (citations omitted). Accordingly, courts have concluded the Double Jeopardy Clause does not apply to prison disciplinary actions. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution . . . ."); *Anderson v. Padula*, No. 0:05-3029-PMD, 2006 WL 1075003, at *4 (D.S.C. Apr. 19, 2006) (concluding the Double Jeopardy Clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge, first through an informal resolution and then through a disciplinary hearing regarding the same charge); *see also Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (citation omitted) (finding that it was well-established that prison disciplinary sanctions do not implicate the Double Jeopardy Clause); *Porter v. Coughlin*, 421 F.3d 141, 146–49 (2d Cir. 2005) (using the framework articulated in *Hudson* to determine whether prison disciplinary proceedings are criminal sanctions for purposes of double jeopardy analysis and concluding that the prison disciplinary proceeding at issue presented no violation of the Double Jeopardy Clause). As a result, the Court finds

15

Plaintiff's allegations do not implicate the Double Jeopardy Clause, and the Court recommends that Defendants' motion for summary judgment be granted as to this claim.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity because their conduct did not violate any clearly-established rights of which a reasonable government official would have known.  The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).  Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights.  Therefore, the Court finds Defendants are entitled to qualified immunity.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 33] be GRANTED.[7]

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 27, 2011
Greenville, South Carolina

---

[7] Defendants also assert Plaintiff's claims are patently frivolous, and therefore, the Court should dismiss Plaintiff's suit and impose a strike against Plaintiff pursuant to the Prison Litigation Reform Act ("PLRA").  [Doc. 33-1 at 13–14.]  Under the PLRA, a court may dismiss a prisoner's case if the court determines the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  If the case is dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, a strike is imposed; after three strikes, a prisoner cannot bring a civil action or appeal a judgment in a civil action or proceeding under the PLRA unless the prisoner is in imminent danger of serious physical injury.  See id. § 1915(g).  The Supreme Court has stated that the PLRA authorizes courts to dismiss civil prisoner suits if the claims are based on "an indisputably meritless legal theory" or "clearly baseless" factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).  Further, the PLRA accords courts broad discretion to dismiss suits under the Act's guidelines.  See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (stating that courts have broad discretion under the PLRA in part because "'frivolous' . . . is simply not susceptible to categorical definition").  Here, while the District of South Carolina has addressed claims based on the pink jumpsuit policy and its enforcement at RCI, the Court finds Plaintiff's claims were not "clearly baseless."  For example, Plaintiff's claims and allegations were not identical to previous cases, which could have provided a basis for going against or fleshing out the District's precedent.  Accordingly, the Court declines to recommend the imposition of a strike in this case.